# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SUSAN FREESE,**

      **Plaintiff,**

**v.**                                                                  **Case No.: 8:15-cv-1315-T-27AAS**

**CAROLYN W. COLVIN,**
**Commissioner of Social**
**Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Section 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.[1]

## I. PROCEDURAL HISTORY

Plaintiff, Susan Freese, filed a Title II application for a period of disability and DIB and a Title XVI claim for SSI on March 5, 2009. (Tr. 28).  Plaintiff's DIB claim was denied initially and upon reconsideration. (Tr. 28).  Plaintiff's SSI claim was initially approved, but Plaintiff did not receive

---

[1] The district judge referred this matter to the undersigned for consideration and a Report and Recommendation.  *See* Local Rule 6.01(a), M.D. Fla.

payments on this claim due to excessive income and her living arrangements. (Tr. 28).   This determination was affirmed on reconsideration.  (Tr. 243-45).

Plaintiff then protectively filed a new Title XVI claim for SSI on January 6, 2011 (Tr. 28, 247-55), and filed a new Title II application for a period of disability and DIB on May 25, 2011 (Tr. 28, 257-63).  In both applications, Plaintiff alleged disability beginning March 27, 2004. (Tr. 28, 248, 257).  Plaintiff's date last insured is September 30, 2006. (Tr. 28). Plaintiff's claims were denied initially and upon reconsideration.  (Tr. 28, 94-128).  Plaintiff received an administrative hearing before an ALJ, which was held on July 10, 2013. (Tr. 28, 51).   Fifty-one (51) years old at the time of the hearing, Plaintiff has at least a high school education and no past relevant work. (Tr. 42).

On September 26, 2013, the ALJ denied Plaintiff's claims for disability benefits. (Tr. 28-44). On March 31, 2015, the Appeals Council denied review (Tr. 1-8), making the ALJ's decision the final decision of the Commissioner.

## II.  LEGAL STANDARDS

### A.  FIVE-STEP DISABILITY ANALYSIS

Eligibility for disability benefits requires that the claimant be disabled and therefore unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[2] 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a).   To qualify as a disability, the physical or mental

---

[2]  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

impairment(s) must be so severe that the claimant is not able to do previous work or any other substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

In making a disability determination, the Social Security Administration applies a five-step sequential evaluation process.[3]  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not performing substantial gainful activity, then, at the second step, the ALJ assesses whether the claimant has a severe, medically determinable physical or mental impairment or combination of impairments that meets the duration requirement.[5]  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).[6]  Step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected."  *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986).[7]

At step three, the ALJ considers if the claimant's severe impairment(s) meets or medically equals the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. ("the

---

[3]  At each step, the ALJ is required to make certain determinations based upon the applicable criteria.  However, if the ALJ determines at a step of the sequential analysis that the claimant is under a disability within the meaning of the Act, the analysis ceases.

[4]  Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.910(a).  Gainful work activity is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.910(b).

[5]  A severe impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities.  *See* 20 C.F.R. §§ 404.1521(a), 416.921(a).

[6]  An impairment or combination of impairments is not severe when medical or other evidence establishes that the impairment(s) does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.

[7]  Unless the evidence indicates otherwise, mental impairments are non-severe at step two if the degree of limitation in the first three functional areas is "none" or "mild" and the fourth functional area is "none."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Listings" or "Appendix 1").  The Listings contain impairments so severe that if a claimant's impairment(s) meets or medically equals a listed impairment, the claimant is considered disabled without further consideration.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the Listings do not apply, the ALJ will move to step four to assess whether the claimant can perform past relevant work based upon all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The determination at step four involves a two-pronged analysis.  First, the ALJ must make a finding about a claimant's residual functional capacity ("RFC"), which is the level of physical and mental work activities claimant can do on a sustained basis despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's RFC, the ALJ must consider all of the medical and nonmedical evidence regarding claimant's impairments, regardless of severity, and any related symptoms, such as pain, that, in conjunction, may cause physical or mental limitations.  20 C.F.R. §§ 404.1545, 416.945.  The second phase of step four requires the ALJ to determine whether a claimant can perform past relevant work in light of the RFC.  20 C.F.R. §§ 404.1520(f), 416.920(f).[8]

The ALJ moves to step five of the sequential analysis if the claimant is not able to perform his past relevant work.  42 U.S.C. § 423(d)(2)(A).  At step five of the sequential analysis, the burden shifts to the Commissioner to show the existence of other jobs that exist in significant numbers in the national economy that, given the claimant's impairments, the claimant can perform.  20 C.F.R. §§ 404.1520(g), 416.920(g).  In making this determination, the ALJ considers a claimant's RFC,

---

[8] Past relevant work is work performed within the last fifteen (15) years and performed long enough so that the claimant can learn to do the job and the job be considered substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

age, education, and work experience to determine if the claimant can perform any other work.[9] The claimant is considered not under a disability if there are jobs that exist in significant numbers that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## B.  STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision that a claimant is not disabled is supported by substantial evidence and that the ALJ applied the proper legal standards.  42 U.S.C. § 405(g); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted).  Under the substantial evidence test, findings of fact made by administrative agencies may be reversed only when the record compels a reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).  "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.*

Furthermore, it is the Commissioner's duty, not the Court's, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson,* 445 F.2d 656, 656 (5th Cir. 1971).[10]  The Commissioner is also responsible for drawing inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

---

[9]  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant, usually through vocational expert testimony.  *Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir. 1989).  The ALJ may also apply the Medical Vocational Guidelines ("the Grids").  *Phillips v. Barnhart,* 357 F.3d 1232, 1239 (11th Cir. 2004).

[10]  The Eleventh Circuit has adopted the former Fifth Circuit's decisions as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court is not to reweigh the evidence. *Parker v. Bowen,* 793 F.2d 1177, 1178 (11th Cir. 1986). Rather, the Court must scrutinize the entire record to determine the reasonableness of the ALJ's findings. *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992). The Court's review is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled, taking into account evidence favorable and unfavorable to the decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

When the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result or if the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court may remand the decision of the Commissioner under sentence four of 42 U.S.C. §405(g) if the Commissioner's decision: 1) applies the incorrect law, 2) fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or 3) is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Services,* 21 F.3d 1064, 1066 (11th Cir. 1994).

With respect to the ALJ's findings of fact, judicial review is limited to determining whether the record, as a whole, contains substantial evidence to support the ALJ's factual findings and whether the decision comports with correct legal standards. *See* 42 U.S.C. § 405(g). No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo*. The Commissioner is required to apply the correct law and provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991); *see Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision

that the proper legal standards were applied, then remand to the Commissioner for clarification is required. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

## III. SUMMARY OF THE ALJ'S DECISION

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2004, her alleged onset date, and determined Plaintiff's date last insured was September 30, 2006. (Tr. 31). The ALJ concluded at step two that Plaintiff had severe impairments of "major depressive disorder, generalized anxiety disorder, panic disorder, chronic pain disorder, rule out dementia, history of polysubstance abuse, history of head trauma, hepatitis C, mild disorders of the spine, and headaches." (Tr. 31). However, at step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of any of the Listings. (Tr. 33).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC: "[T]o perform light work… except she is limited to climbing ladders, ropes, and scaffolds frequently and stooping frequently. Moreover, she is limited to frequent overhead reaching with the right upper extremity due to mild disorders of the spine. She can understand, carryout [sic] and remember simple instructions." (Tr. 35).

The ALJ determined, at step four, that Plaintiff had no past relevant work, but found Plaintiff capable of performing other jobs available in significant numbers in the national economy, such as router, checker, and marker. (Tr. 42-43). Accordingly, the ALJ ruled that Plaintiff was not disabled during the relevant period. (Tr. 43-44).[11]

---

[11] The ALJ explained that, in arriving at her decision, she did not consider the records in Exhibits 1F through 4F and portions of Exhibit 9F or any evidence from the period prior to December 21, 2009, as that evidence was considered in Plaintiff's prior application. (Tr. 28)

On March 31, 2015, the Appeals Council denied review of the ALJ's decision.  Thus, the ALJ's decision stands as the final decision of the Commissioner, now subject to review in this Court. (Tr. 1-8).

## IV. ANALYSIS

Plaintiff identifies three bases on which to remand the decision of the Commissioner.  (Doc. 19).  Plaintiff contends that the ALJ (1) erred in failing to consider the evidence of record prior to December 21, 2009, and in finding that *res judicata* applied; (2) failed to properly weigh the medical opinions of record related to Plaintiff's mental health; and (3) erred in determining Plaintiff's allegations were not entirely credible.  For the reasons stated herein, remand is not required with regard to the ALJ's application of *res judicata*.  However, remand is required for the Commissioner's further consideration of certain medical opinions related to Plaintiff's mental health.  And, while remand is not warranted solely on the issue of Plaintiff's credibility, because the record could change on remand, the Commissioner shall also consider Plaintiff's credibility in light of the entire record at that time.

### A.  The ALJ's Application of *Res Judicata*

In Plaintiff's applications for DIB and SSI, Plaintiff alleged disability beginning March 27, 2004. (Tr. 28, 248, 257).  However, the ALJ determined that evidence of record dated prior to December 21, 2009, pertained to Plaintiff's previous disability applications.  The ALJ stated that she did not consider those records in reaching the decision that Plaintiff was not disabled. (Tr. 28-29).  Plaintiff contends that the ALJ improperly relied on the doctrine of *res judicata* when deciding not to consider the evidence of record prior to December 2009.  Plaintiff also asserts that the Commissioner's SSI financial disqualification determination, dated January 18, 2010, should have been reopened on the basis of Plaintiff's January 6, 2011 application.

This Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence, and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004); 42 U.S.C. § 405(g). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (per curiam) (internal citation omitted). The Court may not decide the facts anew or re-weigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005) (per curiam). However, if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered, the Court cannot conduct a meaningful review. *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985). Thus, the ALJ must develop a full and fair record, and evaluate all the relevant evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Administrative *res judicata* applies when the Commissioner "[has] made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and [the] previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. §§ 404.957(c), 416.1457(c); *see also Atkins v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 864, 868 (11th Cir. 2015) (per curiam) (unpublished);[12] *Cash v. Barnhart*, 327 F. 3d 1252, 1254-55 (11th Cir. 2003) (per curiam).

The ALJ stated that, due to the operation of *res judicata*, Plaintiff's prior DIB determination would not be disturbed because "no new and material facts have been presented with respect to

---

[12] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2

the period under consideration . . . [and] there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period." (Tr. 28)  Accordingly, the ALJ explained that she would "not . . . consider[] the records in Exhibits 1F through 4F and portions of 9F or any evidence from the period prior to December 21, 2009, as this evidence was previously considered in the prior application." (*Id.*)

Plaintiff argues that the ALJ should have considered the evidence excluded by the ALJ. However, Plaintiff merely asserts that "*subsequent* new and material evidence, including the evaluations of five psychologists and psychiatrists, *is consistent with the prior evidence* from 2009 demonstrating mental limitations precluding the performance of substantial gainful activity." (Doc. 19 at 19 (emphasis added)).  Plaintiff does not point to any new evidence of record dated during or related to the time period relevant to the prior application. Therefore, the ALJ's review of the evidence prior to December 21, 2009, would have constituted an improper additional review of the same facts and issues considered in the prior application.

Plaintiff's additional argument, that her 2009 SSI application was not administratively final, is equally unpersuasive.  Plaintiff contends that the Commissioner's January 18, 2010 financial disqualification determination should have been reopened by operation of Plaintiff's January 6, 2011 SSI application.  In support, Plaintiff cites 20 C.F.R. § 416.1488. However, this provision states that "[a] determination, revised determination, decision, or revised decision *may* be reopened— (a) Within 12 months of the date of the notice of the initial determination, for any reason[.]" (emphasis added).  Thus, while Plaintiff's subsequent SSI application, dated January 6, 2011, was filed within twelve (12) months of the Commissioner's January 18, 2010 financial disqualification, the language of the cited regulation is permissive, not mandatory.

Further, the decision to reopen a previous application is not reviewable by this court. *See* 20 C.F.R. §§ 404.903(l), 416.1403(5) (explaining that the Commissioner's denial of a request to reopen a decision or determination is not subject to judicial review); *see also Cash*, 327 F.3d at 1256 ("district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a "final decision" within the meaning of § 405(g)"). An exception exists "where a final decision on a prior social security claim is in fact reopened and reconsidered on the merits to any extent on the administrative level." *Cash*, 327 F.3d at 1256 (citation and internal quotation marks omitted). But here, the ALJ explicitly stated that she would not consider the prior evidence and that "[i]f in this decision prior exhibits or evidence are mentioned, it is merely for historical purposes, and not for the purpose of explicitly or implicitly reopening the claimant's previous applications." (Tr. 28-29)

Accordingly, the ALJ did not err in applying *res judicata* to the evidence from the period prior to December 21, 2009, and the ALJ's failure to deem Plaintiff's prior SSI financial determination reopened by application of 20 C.F.R. § 416.1488 is not reviewable by this Court. Remand is, therefore, not required on this issue.

### B.  Weight Given to the Medical Opinions of Record

Next, Plaintiff contends the ALJ improperly weighed the opinions of Patricia Hough, M.D. ("Dr. Hough," Plaintiff's treating psychiatrist), Paula Hughson, M.D. ("Dr. Hughson," a consulting, examining psychiatrist), Maureen O'Harra, Ph.D. ("Dr. O'Harra," a consulting, examining psychologist), Richard Willens, Psy.D. ("Dr. Willens," a state agency, reviewing psychologist), and Linda O'Neil, Ph.D. ("Dr. O'Neil," a state agency, reviewing psychologist).

In evaluating the medical opinions of record, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*,

11

631 F.3d 1176, 1179 (11th Cir. 2011).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Winschel*, 631 F.3d at 1178-79.

 In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. *Phillips*, 357 F.3d at 1240-41;  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).  A treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

 The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted). Additionally, "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." *Id.* (quotation marks and citation omitted). Instead, the weight given to the report of a non-examining physician depends, among other things, "on the extent to which [the report] is supported by clinical findings and consistent with other evidence." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (per curiam) (unpublished); 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

1.  <u>Dr. Hough, Plaintiff's Treating Psychiatrist</u>

On July 31, 2013, Dr. Hough, Plaintiff's treating psychiatrist, opined that Plaintiff had extreme

limitations with regard to her ability to complete a work day or work week without interruptions

from psychologically based or exacerbated mental or physical symptoms. (Tr. 41, 781).  Plaintiff

had marked limitations with regard to her ability to do the following: maintain the concentration

needed to carry out simple and/or repetitive job tasks on a full time basis with only normal work

day break periods, perform simple job tasks at a consistent pace or speed without additional breaks

or increasingly poor performance over time, perform activities within a schedule and maintain

punctuality and attendance within customary tolerances, work in proximity to others without

distracting them due to symptoms or behaviors, work with the general public taking orders and

responding appropriately to customer complaints or problems with orders, and observe multiple

customers and tables for additional requests while taking orders and serving food to other patrons.

(Tr. 41, 781).  Further, with regard to accepting instruction and responding appropriately to

supervision, maintaining socially appropriate behavior and emotional stability when interacting

with coworkers, responding appropriately to changes in a routine or work setting, and memorizing

menus, drink recipes, or daily specials, Plaintiff had moderate limitations. (Tr. 41, 781).

Dr. Hough also opined, among other things, that Plaintiff suffered from severe economic

stressors, that Plaintiff's prescribed medications may cause drowsiness and side effects such as

fatigue or decreased concentration, that Plaintiff's stress and chronic pain interrupt her sleep cycle,

and that Plaintiff's depression and longstanding panic disorder without agoraphobia exacerbate

her physical symptoms, including pain and fatigue. (Tr. 782).  Further, Dr. Hough opined that

Plaintiff's ability to keep lists, do laundry, cook simple foods, shop occasionally, and talk with

relatives did not contradict Dr. Hough's opinion as to Plaintiff's functional abilities.  (*Id.*).

13

The ALJ assigned little weight to Dr. Hough's opinion. (Tr. 41).  However, the ALJ did not provide sufficient explanation to allow the Court to determine whether the ALJ's conclusions were supported by substantial evidence. Citing Exhibits 14F and 15F to the administrative record, the ALJ generally explained that the treatment notes do not demonstrate symptoms or limitations as extreme as described by Dr. Hough. (Tr. 41).  But, Exhibit 14F (consisting of Plaintiff's mental health treatment records from Sarasota County Family Health Center) contains, among other things, treatment notes mentioning the presence of extreme stressors, recurrent panic symptoms, memory and concentration problems, poorly organized speech, preoccupation with guilt, inability to cope, depressed and nervous mood, a sad, dysphoric affect,  and poor problem solving and goal direction. (Tr. 719-21, 723-24).  The ALJ did not address these notes and symptoms in her discussion about Dr. Hough's opinion.

Moreover, Exhibit 15 contains primarily medical, rather than psychological, records from Sarasota County Health Department. (Tr. 728-56).  The ALJ did not explain why those medical records were relevant to her determination to discredit Dr. Hough's opinion regarding Plaintiff's mental symptoms or limitations.  On some occasions, practitioners simply marked a box that Plaintiff's mental status was "normal" and noted medications Plaintiff was taking for anxiety or depression. (Tr. 31, 737-40, 743, 745-51).  But the medical records also contain other brief notations related to Plaintiff's mental health, including that Plaintiff appeared "tearful but calmable," occasionally used hesitant speech, "continue[d] to complain of anxiety," was receiving counseling, and appeared with a "flat affect, depressed mood." (Tr. 739, 741, 744, 751).  The ALJ did not address these notes in her discussion about Dr. Hough's opinion.

Additionally, the ALJ discredited Dr. Hough's opinion because Dr. Hough observed Plaintiff walked with a cane, even though Dr. Hough was not Plaintiff's medical physician. (Tr. 41, 782).

The Court notes that there is a difference between a psychiatrist observing that a patient walks with a cane and a psychiatrist actually prescribing the use of a cane. Here, Dr. Hough merely noted that Plaintiff used a cane; her opinion does not indicate that she prescribed the use of a cane. (Tr. 782). That the ALJ discredited the opinion of Plaintiff's treating psychiatrist on the basis of an observed physical characteristic makes the ALJ's cursory citation to Plaintiff's medical records to discredit the psychiatrist's opinion particularly incongruous.

Overall, the ALJ did not sufficiently explain her consideration of Exhibits 14F and 15F in reaching her determination that the treatment notes do not support the extreme limitations described by Dr. Hough. *See Winschel*, 631 F.3d at 1179 (the ALJ must state "with at least some measure of clarity the grounds for [her] decision.").

As further support for giving little weight to Dr. Hough's opinion, the ALJ stated that Dr. Hough's extreme limitations do not correlate with Plaintiff's conservative treatment of medication management and psychotherapy, and that Plaintiff's "daily and social activities . . . also show she is more capable than as opined by Dr. Hough." (Tr. 41, 42).[13] However, other than a lack of inpatient psychiatric treatment of significant duration,[14] the ALJ did not explain, and the Court will not speculate, what other treatment modalities would be expected for the limitations opined by Dr. Hough. And, as Plaintiff points out, she continued to report increased symptoms of anxiety and depression despite treatment with medication. (Tr. 561, 571, 620, 691, 721, 726-27). On

---

[13] Plaintiff stated that she could prepare simple meals, do laundry, wash dishes, drive, watch television, shop, handle money, and manage her finances. She also took care of her boyfriend full time, lived with friends and family, went to dinner with others, attended church, and volunteered. (Tr. 33-34, 297-98, 324-26, 326, 602, 662-63, 716).

[14] The ALJ acknowledged that Plaintiff presented to the emergency room for altered mental status in January 2012, but discounted this psychiatric treatment because Plaintiff stayed less than twenty-four (24) hours and improved by the time of discharge, at which time Plaintiff's records reflect that she was oriented to person, place, time, and situation, had euthymic affect, and had rational, relevant and goal directed thought. (Tr. 32, 39, 663).

remand, the Commissioner shall provide more detail as to how Plaintiff's treatment was conservative, what further treatment modalities the ALJ would have expected in light of her alleged impairments, and how consideration of such conservative treatment affected the ALJ's consideration of Dr. Hough's opinion.

Additionally, "participation in everyday activities of short duration, such as housework or fishing," does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Given the other deficiencies in the ALJ's consideration of Dr. Hough's opinion, as described above, reference to Plaintiff's daily activities is insufficient to demonstrate that substantial evidence supports the ALJ's decision to give little weight to Dr. Hough's opinion.

Therefore, remand is required for the Commissioner to provide sufficient explanation to allow the Court to determine whether the ALJ's conclusions as to Dr. Hough's opinion were supported by substantial evidence.

2. Dr. O'Harra, Consulting, Examining Psychologist

On March 14, 2012, Dr. O'Harra, a consulting, examining psychologist, performed a psychological evaluation of Plaintiff. (Tr. 679-82). The evaluation included a mental status examination and objective intelligence and memory testing. (Tr. 680-81). Among other things, Dr. O'Harra determined that Plaintiff was functioning at the borderline range of intelligence and memory. (Tr. 32, 680-81). She also stated that Plaintiff was not capable of managing her own funds. (Tr. 41, 682).

Addressing only Dr. O'Harra's opinion that Plaintiff was not capable of managing her own funds, the ALJ gave little weight to Dr. O'Harra's opinion. (Tr. 41) The ALJ explained that Plaintiff's daily activities required functional abilities similar to those required to manage her funds

and that the record contained little indication that Plaintiff was precluded from managing her funds due to judgment or arithmetic problems. (Tr. 41). While the ALJ mentioned in an earlier portion of the opinion that Dr. O'Harra found Plaintiff had borderline memory and intelligence (Tr. 32), the ALJ did not discuss this finding in describing the weight given to Dr. O'Harra's opinion. Moreover, the ALJ later credited Dr. O'Harra's opinion that Plaintiff had deficits in memory. (Tr. 40). The Court is, therefore, unable to determine whether the ALJ's decision to give little weight to Dr. O'Harra's opinion is supported by substantial evidence. Accordingly, remand is required.

### 3. Dr. Hughson, Consulting, Examining Psychiatrist

Dr. Hughson, a consulting, examining psychiatrist, evaluated Plaintiff on September 15, 2010. (Tr. 600-605). Upon examination, Dr. Hughson observed that Plaintiff was alert, was oriented in all spheres, had fair insight, and had adequate judgment. (Tr. 41, 603). Dr. Hughson opined that Plaintiff had marked limitations in understanding and remembering detailed or complex instructions, carrying out instructions, attending and concentrating, working without supervision, interacting with the public, and adapting to changes in the workplace. (Tr. 40, 604). Plaintiff was moderately limited with regard to understanding and remembering very short and simple instructions, interacting with co-workers and supervisors, being aware of hazards and reacting appropriately, and using public transportation or traveling to unfamiliar places. (Tr. 40, 604-605). Dr. Hughson also opined, among other things, that Plaintiff's executive function was seriously impaired, she had marked difficulty organizing appropriate care for herself, and she had a poorly adaptive coping style. (Tr. 40, 604).

The ALJ assigned little weight to Dr. Hughson's opinion. (Tr. 41). Although Plaintiff argues that Dr. Hughson's evaluation provided support for her findings regarding Plaintiff's mental limitations, the ALJ may properly discount a treating physician's opinion, as explained above, if

the opinion is inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41.  Here, the ALJ explained that the opinion was inconsistent with Dr. Hughson's own mental status examination, which showed Plaintiff was fully oriented, alert, had relevant thought processes, fair insight, and adequate judgment. (Tr. 41, 603).  In this circumstance, the ALJ's decision to give little weight to Dr. Hughson's opinion is supported by substantial evidence. Remand is not required.[15]

### 4.   Drs. Willens & O'Neil, State Agency, Reviewing Psychologists

The opinions of state agency psychological consultants Drs. Willens and O'Neil are also a part of the administrative record. (Tr. 39-40, 123-25, 164-66).  Dr. Willens opined, among other things, that Plaintiff had marked limitations with regard to understanding, remembering, and carrying out detailed instructions. (Tr. 39, 123-24).  Plaintiff was also moderately limited with regard to understanding, remembering, and carrying out very short and simple instructions. (Tr. 39-40). While Plaintiff had moderate limitations related to maintaining attention and concentration for extended periods, being able to complete a normal workday or workweek without interruptions from psychologically based symptoms, and being able to perform at a consistent pace without unreasonable rest periods, Dr. Willens stated Plaintiff should be able to perform simple tasks, at an appropriate pace, for six (6) to eight (8) hours in an eight (8) hour workday and sustain that level for days and weeks. (Tr. 39-40, 124-25).  Plaintiff also had moderate adaptation limitations, but could adapt over time to most changes and demands on a sustained basis. (Tr. 40, 125) Regarding Plaintiff's social functioning, Dr. Willens found Plaintiff moderately limited with

---

[15]  In support of her decision to give little weight to Dr. Hughson's opinion, the ALJ also noted that Plaintiff underwent conservative treatment. As previously explained, on remand, the ALJ shall provide more detail as to how Plaintiff's treatment was conservative, what further treatment modalities the ALJ would have expected in light of her alleged impairments, and how consideration of such conservative treatment affected the ALJ's decision.

regard to interacting with the public and opined that Plaintiff would function best at tasks with limited social demands. (Tr. 40, 124-25).

Dr. O'Neil found that Plaintiff was capable of understanding, remembering, and carrying out simple instructions, but was moderately limited as to detailed instructions, could adapt over time to routine changes in work settings, and would function best in settings with limited social demands. (Tr. 40, 164-66).   Dr. O'Neil also explained that Plaintiff would benefit from some supervision and help with decision-making and planning. (Tr. 40, 165).

The ALJ gave "greater weight" to Dr. Willens' opinion on Plaintiff's attention, concentration, pace, and adaptation, and similarly gave "some weight" to Dr. O'Neil's opinion to the extent it was consistent with short, simple instructions and unskilled work. (Tr. 40).   But the ALJ gave little weight to the opinions of Drs. Willens and O'Neil regarding Plaintiff's social functioning. (Tr. 40).   The ALJ explained that the record demonstrated Plaintiff performed a wide range of social activities, including being in a long-term relationship, living with friends and family, going to dinner with others, attending church, and volunteering. (Tr. 40, 326, 602, 662-63, 716).   Plaintiff was also friendly, cooperative, and made eye contact with medical sources. (Tr. 40, 600, 628, 663).

Plaintiff contends that the ALJ's determination to give little weight to the opinions of Drs. Willens and O'Neil regarding Plaintiff's social functioning was based on the ALJ's lay interpretation of Plaintiff's activities of daily living.   Plaintiff reaches this conclusion by pointing out that not only did the ALJ reject the opinions of Drs. Willens and O'Neil regarding Plaintiff's social functioning, the ALJ also rejected the other opinions of record on Plaintiff's mental functional abilities.

"[T]he ALJ commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause, or if he fails to articulate clearly his reason

for according this evidence less weight." *Wind v. Barnhart*, 133 F. App'x 684, 691 (11th Cir. 2005) (per curiam) (unpublished) (citations omitted).  As remand is required for re-evaluation of the other medical opinions related to Plaintiff's mental functioning, the Court is unable to determine whether the ALJ substituted her own opinion for the opinions of the mental health providers on the issue of Plaintiff's social capabilities.  On remand, the Commissioner shall re-evaluate Plaintiff's social capabilities in light of all of the evidence of record.

The ALJ also gave little weight to Dr. O'Neil's opinion as to Plaintiff's supervisory, decision-making, and planning limitations. (Tr. 40).  The ALJ explained that "[t]reatment notes do not show any limitations on decision-making or planning." (Tr. 40).  However, the record contains notations about Plaintiff's limited problem-solving abilities, which the ALJ did not address. (Tr. 719, 721, 724).  As remand is required on the issues identified herein, on remand the Commissioner shall also address Plaintiff's problem-solving abilities in light of the medical opinions and other evidence of record.[16]

### C.  Credibility

Plaintiff further contends that the ALJ erred in determining Plaintiff's allegations were not entirely credible.

In the Eleventh Circuit, the Commissioner evaluates a claimant's testimony about subjective complaints, such as pain or other subjective symptoms,  according to a three-part "pain standard." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).   A plaintiff must first demonstrate objective medical evidence of an underlying medical condition, and then demonstrate

---

[16] To the extent that Plaintiff asserts the ALJ failed to consider the opinions of Lori Martinez, Psy.D., and D.B. Johnson, Psy.D., the Court notes those opinions were rendered prior to December 2009. (Tr. 76-78, 588-92)  As explained above, the ALJ did not err by applying *res judicata* to the evidence from the period prior to December 21, 2009.

that either the objective medical evidence substantiates the severity of the pain from the condition, or the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62.

Here, the ALJ determined Plaintiff had severe impairments of "major depressive disorder, generalized anxiety disorder, panic disorder, chronic pain disorder, rule out dementia, history of polysubstance abuse, history of head trauma, hepatitis C, mild disorders of the spine, and headaches."   (Tr. 31).   However, the ALJ found that, while Plaintiff's impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 36).   Overall, the ALJ explained that Plaintiff made inconsistent statements, the medical record did not support Plaintiff's subjective symptoms or alleged limitations, and Plaintiff's treatment was conservative. (Tr. 37-39).

Regarding the ALJ's conclusion that Plaintiff's conservative treatment demonstrated Plaintiff's subjective allegations were not entirely credible, Plaintiff argues that she was unable to afford the prescribed medications for her headaches.  However, the records she cites in support of this assertion are dated during the time relevant to the prior application. (Tr. 462, 464, 466).  As explained above, the ALJ did not err in applying the doctrine of *res judicata* to those records.  But, as also previously determined, the ALJ's explanation related to Plaintiff's conservative mental health treatment and the opinions of record from mental health providers is deficient and should be addressed on remand.

With regard to her pain and headaches, the ALJ explained that Plaintiff's alleged pain, disorders of the spine, or related limitations (such as difficulties standing, lifting, walking, sitting, sleeping, bending, or concentrating) were not supported by the record. (Tr. 37). The ALJ noted that a June 2013 CT scan showed Plaintiff's rib fractures had healed (Tr. 37, 779), an MRI of the lumbar spine showed only mild findings (Tr. 37, 712), a treatment record showed Plaintiff denied joint pain and muscle aches (Tr. 38, 646), and physical examinations showed no neurological, sensory, or motor deficits and full range of motion and strength in Plaintiff's lower extremities. (Tr. 38, 628, 647).

Plaintiff points to her established history of cervical spine fusion with subsequent degenerative disk disease and a motor vehicle accident with post-traumatic changes, lung scarring, and head injury. (Tr. 441-42, 494, 510-11, 514, 531-32, 534, 537-38, 708, 712, 776, 779). She argues that this history and objective imaging confirming spinal abnormalities is reasonably expected to result in pain and headaches. However, "[i]t is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability." *Martinez v. Astrue*, No. 8:08-CV-1134-T-TGW, 2009 WL 2163115, at *5 (M.D. Fla. July 20, 2009). Plaintiff also cites the report of Karl R. Moedl, M.D., a consulting, examining physician, who credited her allegations of neck pain. (Tr. 629). But, as the ALJ noted, Dr. Moedl questioned Plaintiff's credibility as to her other symptoms and limitations, and concluded that she was more capable than she alleged. (Tr. 41, 629).[17] Further, the ALJ stated that Plaintiff was discharged from physical therapy. (Tr. 38, 774-75). Plaintiff argues that she was discharged because she was unable to meet many of her treatment goals and because she had demonstrated no improvement. (Tr. 774-75).

---

[17] Dr. Moedl stated, "I believe she exacerbate[s] her chest[] and right shoulder pain. The cervical neck pain I believe is real. Believe she can walk, lift and stay on her feet much longer than she states." (Tr. 41)

However, the ALJ noted that the discharge report indicated Plaintiff was independent and able to return to home exercise. (Tr. 38, 775).

The ALJ also found Plaintiff made a number of inconsistent statements.  Particularly, the ALJ noted that a treating nurse indicated Plaintiff declined vocational rehabilitation because she was pursuing her disability claim. (Tr. 37, 73).  Plaintiff contends she was confused and thought the nurse was discussing physical therapy (Tr. 37, 73-74), and further argues that the refusal is not relevant because she later accepted both vocational and physical therapy. (Tr. 741, 757-75).  However, as the Commissioner points out, the issue is not whether she later participated in therapy, but whether the ALJ believed her when she answered the question.  The Court cannot reweigh the evidence and the ALJ did not err in considering the medical record at issue and Plaintiff's response to questioning at the hearing. *See Davis v. Apfel*, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted) (it is the Commissioner's responsibility to draw inferences from the evidence that are supported by substantial evidence), *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (the credibility of witnesses is for the Commissioner to determine, not the courts).

Moreover, that was not the only inconsistency noted by the ALJ.  The ALJ also explained that Plaintiff testified that she does not drive due to her medications, but reported on another occasion that she drove. (Tr. 37, 298, 325).  Further, Plaintiff testified that she lay in bed all day, but also reported and testified to performing a number of other activities, such as caring for her boyfriend, attending church, volunteering, and watching television, among other activities. (Tr. 37, 71-72, 73, 716).

Aside from the inconsistency noted, the ALJ also explained that her daily activities indicate Plaintiff is more capable than alleged. (Tr. 37).  While Plaintiff's ability to engage in some everyday activities does not disqualify her from receiving disability benefits, *Lewis v. Callahan*,

125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ may properly consider those daily activities, among the other evidence of record, in determining whether Plaintiff is entitled to disability benefits. *Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).   Here, the ALJ properly considered Plaintiff's ability to perform daily activities in conjunction with other evidence in determining Plaintiff's allegations were not entirely credible.

On the current record, as the ALJ articulated multiple reasons for not fully crediting Plaintiff's allegations and substantial evidence supports the ALJ's credibility determination, this issue, on its own, does not entitle Plaintiff to remand.   However, as remand is required on other grounds and the record could change on remand, the Commissioner shall consider Plaintiff's credibility in light of the entire record at that time.[18]

## III. CONCLUSION

For these reasons, the decision of the Commissioner contains reversible error.   The undersigned, therefore, recommends that the decision should be reversed and remanded to the Commissioner.   Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **REVERSED and REMANDED** and the case be **DISMISSED**; and

(2)     The Clerk of Court enter final judgment in favor of Plaintiff consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: August 5, 2016.**

---

[18] The ALJ also stated that Plaintiff reported she obtained her GED, "but testified she did not have her GED certificate." (Tr. 37).   The Court notes that Plaintiff actually testified, when asked what her education level was, that her education was "[t]enth grade level, but I did get my GED." (Tr. 61).   The ALJ's error was harmless, however, given that remand is required on other grounds, the record may change, and Plaintiff's credibility will be reassessed in conjunction with the entire record on remand.

_Amanda Arnold Sansone_

AMANDA ARNOLD SANSONE
United States Magistrate Judge


## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge

25